IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| PETER HOCK, | : | | |
| | : | | |
| Plaintiff, | : | CIVIL ACTION | |
| | : | NO. 04-CV-4517 | |
| v. | : | | |
| | : | | |
| COUNTY OF BUCKS AND BUCKS COUNTY DEPARTMENT OF CORRECTIONS, | : | | |
| | : | | |
| | : | | |
| Defendants. | : | | |

**STATEMENT OF UNDISPUTED FACTS
OF DEFENDANTS COUNTY OF BUCKS AND
<u>BUCKS COUNTY DEPARTMENT OF CORRECTIONS</u>**

1. Defendants County of Bucks and Bucks County Department of Corrections ("Defendants"), by and through their undersigned counsel, hereby submits this Statement of Undisputed Facts in support of their Motion for Summary Judgment.[1]

2. Defendant County of Bucks is a municipal entity that maintains offices in Doylestown, PA. (Compl. at ¶ 2).

3. Defendant Bucks County Department of Corrections is a County funded and operated criminal justice agency, part of the executive branch of county government. (<u>See</u> description of Department of Corrections at Bucks County Government website, attached to Defendants' Motion for Summary Judgment as Exhibit "A").

4. The Department of Corrections services all municipal and state law enforcement authorities via the Bucks County Court of Common Pleas and 18 local District Courts. (Ex. A).

---

[1] The references to Exhibits refer to the Exhibits attached to Defendants' Motion for Summary Judgment.

5.      The Department of Corrections is the single largest criminal justice agency within Bucks County, employing 328 people in various types of jobs.  (Ex. A).

6.      The Bucks County Correctional Facility ("BCCF") is a facility that houses medium to maximum security classified pre-trial detainees and convicted prisoners.  (Ex. A).

7.      Plaintiff Peter Hock ("Hock") worked as a probationary Corrections Officer in the BCCF for a little less than six months, from April 8, 2002 through September 30, 2002.  (See excerpted pages of the deposition of Peter Hock, dated July 27, 2005, attached to Defendants' Motion for Summary Judgment as Exhibit "B," at 101-102, 115).

8.      Hock understood that he (1) was a probationary employee for his first six months of employment; (2) would receive evaluations after 90, 120, and 150 days to determine whether his performance was acceptable to continue employment; and (3) was not part of the union until he completed his probationary period.  (See Ex. B, Hock dep. at 101-102).

9.      As a Corrections Officer, Hock was responsible for maintaining security and discipline in the BCCF.  An important task of a Corrections Officer is writing and understanding reports.  (See Ex. B, Hock dep. at 19, 24, 111-112; see also Job Description of Corrections Officer for the County of Bucks attached to Defendants' Motion for Summary Judgment as Exhibit "C").

10.     Writing incident reports is an important duty of a Corrections Officer at the BCCF.  (See Ex. B, Hock dep. at 19, 24).

11. Hock received a few days of training in the writing of reports. (See Ex. B, Hock dep. at 19-20).

12. In the event that a Corrections Officer witnessed an incident, the BCCF required a Corrections Officer to complete an Incident Report. (See Ex. B, Hock dep. at 23).

13. In fact, a Corrections Officer usually had to complete a written report before the Corrections Officer could leave work after completion of his or her shift. (See Ex. B, Hock dep. at 23-24).

14. Hock knew he could be disciplined if he did not write an Incident Report in a timely manner. (See Ex. B, Hock dep. at 24).

15. Hock sought to include all important facts in the incident reports that he completed. (See Ex. B, Hock dep. at 20).

16. Hock wrote only two incident reports that form the basis for his complaint. (See Ex. B, Hock dep. at 10-11; see also Compl. at ¶ 29).

17. The first report occurred on August 8, 2002, when Hock completed an incident report describing his observations of a "Code 99" F block incident involving an inmate that occurred on August 6, 2002. (See Ex. B, Hock dep. at 11-26; see also Incident Report From Corrections Officer Hock to Shift Command, dated August 8, 2002, attached to Defendants' Motion for Summary Judgment Exhibit "D").

18. He wrote that "[i]t seemed that the inmates where [sic] tring [sic] to get storys [sic] straight. I saw a lot of them whispering about it and telling each other what I/M Herder thought happened." (See Ex. B, Hock dep. at 11-26; see also Ex. D).[2]

19. Hock turned the report into shift command and did not provide a copy to anyone else. (See Ex. B, Hock dep. at 13).

20. Hock did not verbally report anything that was not in his written report. (See Ex. B, Hock dep. at 10-12).

21. Hock had a responsibility as a Corrections Officer to complete this report. (See Ex. B, Hock dep. at 23).

22. No one told Hock to change or rewrite his report. (See Ex. B, Hock dep. at 13-14).

23. The second report occurred on September 10, 2002, when Hock submitted an internal incident report to shift command describing his observation of a Code 99 incident in the reception area. (See Ex. B, Hock dep. at 45-49, 69-70; see also Incident Report From Officer Hock to Shift Command, dated September 10, 2002, attached to Defendants' Motion for Summary Judgment Exhibit "E").

24. Hock did not submit the incident report to anyone else. (See Ex. B, Hock dep. at 69-70).

---

[2] Hock alleges in his Complaint that "he reported first-hand observations that inmates fabricated a version of events involving an incident of excessive force where the Defendants elected to pursue charges against the officers involved . . . ." (Compl. at ¶ 29). Hock also alleged in the Complaint that he reported that he witnessed the inmates contriving or rehearsing a version of the incident to support the inmate involved. (Compl. at ¶ 13). These averments are not supported by Hock's Incident Report. (See Ex. D). Under either version of the report, Hock fails to establish that his speech was on a matter of public concern.

25. Hock wrote that an inmate came and informed Officer Baehser that another inmate should not be on the same block. (See Ex. B, Hock dep. at 46; see also Ex. E at Bucks/Hock 0005).

26. Hock also wrote that the inmate had to be forcibly taken off the block. See Ex. E at Bucks/Hock 0006).

27. Two other officers (Officer Vegvary and Officer Baehser) also completed reports of this incident that were similar to Hock's report. Officer Baehser wrote that an inmate approached him and told him that he could not be on the same block as another inmate. (See Ex. B, Hock dep. at 49-51; see also Incident Report From Officer Baehser to Shift Command, dated September 10, 2002, attached to Defendants' Motion for Summary Judgment as Exhibit "F").

28. Corrections Officer Vegvary wrote that he and Hock had to restrain an inmate and place him on the ground. (See Ex. B, Hock dep. at 51-52; see also Incident Report From Corrections Officer Vegvary to S/C, dated September 10, 2002, attached to Defendants' Motion for Summary Judgment as Exhibit "G").

29. Neither Baehser nor Vegvary were disciplined for the incident or submitting reports of the incident. (See Ex. B, Hock dep. at 51-52).

30. On September 30, 2002, Captain Brown gave Hock a 150 day evaluation showing that he had received a 59 percent average. (See Ex. B, Hock dep. at 83; see also Captain's Review Form Probationary Employee Evaluation attached to Defendants' Motion for Summary Judgment as Exhibit "H").

31. Hock needed 60 percent or above to pass his probationary period. (See Ex. B, Hock dep. at 60; see also Ex. H).

32. Brown also wrote that "[s]upervisors have reported that Officer Hock lacks IPC skills and has been overly aggressive with inmates.  I counseled him about this on 9/9/02.  On 9/10/02 Officer Hock was again involved in excessive use of force on an inmate.  Therefore, I am recommending termination at this time."  See Ex. H.; Compl. at ¶ 23).

33. On September 30, 2002, the County of Bucks terminated Hock's probationary employment.  (See Ex. B, Hock dep. at 114-116; see also County of Bucks Record of Disciplinary Action attached to Defendants' Motion for Summary Judgment as Exhibit "I").

34. Hock responded that "[s]upervisors need to step up to the plate."  (See Ex. B, Hock dep. at 116; see also Ex. I.)

35. Hock meant that some of the supervisors that he viewed as being sloppy or not following procedure had to improve their performance.  (See Ex. B, Hock dep. at 116).

36. Hock did not write anything about the two incident reports of August 8, 2002 or September 10, 2002 or his First Amendment rights in response to his termination.

Date: August 1, 2005                             s/
                                                 Frank A. Chernak (I.D. No. 57602)
                                                 BALLARD SPAHR ANDREWS &
                                                 INGERSOLL, LLP
                                                 1735 Market Street, 51st Floor
                                                 Philadelphia, PA 19103-7599
                                                 (215) 665-8500

                                                 Attorneys for Defendants
                                                 County of Bucks and Bucks County
                                                 Department of Corrections

**CERTIFICATE OF SERVICE**

      I, Frank A. Chernak, hereby certify that on the 1st day of August, 2005, a true and correct copy of the foregoing Statement of Undisputed Facts of Defendants County of Bucks and Bucks County Department of Corrections has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that I caused a true and correct copy of same to be served upon the following counsel via U.S. Mail, postage prepaid, addressed as follows:

> David P. Bateman
> Bateman & Caliendo, LLC
> 420A Dresher Road
> Mezzanine Level
> Horsham, PA  19044

Date:  August 1, 2005                                      s/
                                                      Frank A. Chernak