IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| PETER HOCK, | : | | |
| | : | | |
| Plaintiff, | : | CIVIL ACTION | |
| | : | NO. 04-CV-4517 | |
| v. | : | | |
| | : | | |
| COUNTY OF BUCKS AND BUCKS COUNTY DEPARTMENT OF CORRECTIONS, | : | | |
| | : | | |
| | : | | |
| Defendants. | : | | |

## ORDER

AND NOW, this _____ day of _____, 2005, upon consideration of the Motion of Defendants County of Bucks and Bucks County Department of Corrections for Summary Judgment Pursuant to Fed. R. Civ. P. 56, and Plaintiff's response thereto, it is hereby

ORDERED and DECREED that the Motion is GRANTED, and judgment is granted in favor of Defendants County of Bucks and Bucks County Department of Corrections and against Plaintiff Peter Hock.

BY THE COURT:

_____

J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER HOCK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 04-CV-4517 |
| v. | : | |
| | : | |
| COUNTY OF BUCKS AND BUCKS COUNTY DEPARTMENT OF CORRECTIONS, | : | |
| | : | |
| Defendants. | : | |

**MOTION OF DEFENDANTS COUNTY OF BUCKS AND
BUCKS COUNTY DEPARTMENT OF CORRECTIONS
<u>FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56</u>**

Defendants County of Bucks and Bucks County Department of Corrections (collectively, the "Defendants"), by and through their undersigned counsel, hereby move for summary judgment, pursuant to Federal Rule of Civil Procedure 56. In support thereof, Defendants aver the following:

1. On September 23, 2004, Plaintiff Peter Hock ("Hock" or "Plaintiff") filed a Complaint alleging that Defendants terminated his employment in violation of his First Amendment rights.

2. The pleadings, depositions and discovery of record show that Hock cannot produce evidence of facts essential to his cause of action.

3. Hock's First Amendment retaliation claim fails because Hock cannot establish that he engaged in speech protected by the First Amendment.

4. Hock's claim for municipal liability fails because he has not established an unlawful "policy, practice, or custom," of retaliating against Corrections Officers for their exercise of First Amendment rights.

5.	In support of this Motion for Summary Judgment, Defendants incorporate herein by reference the attached Brief in Support of Defendants' Motion for Summary Judgment.

WHEREFORE, Defendants County of Bucks and Bucks County Department of Corrections request that this Court grant judgment in their favor and against Plaintiff Peter Hock and dismiss the Complaint with prejudice.

Respectfully submitted,

Dated:	August 1, 2005	/s/
	Frank A. Chernak (I.D. No. 57602)
	BALLARD SPAHR ANDREWS &
	INGERSOLL, LLP
	1735 Market Street, 51st Floor
	Philadelphia, PA 19103-7599
	(215) 665-8500

	Attorneys for Defendants
	County of Bucks and Bucks County
	Department of Corrections

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER HOCK, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 04-CV-4517 |
| v. | : | |
| | : | |
| COUNTY OF BUCKS AND BUCKS COUNTY DEPARTMENT OF CORRECTIONS, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**BRIEF OF DEFENDANTS COUNTY OF BUCKS AND
BUCKS COUNTY DEPARTMENT OF CORRECTIONS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants County of Bucks and Bucks County Department of Corrections (collectively, the "Defendants"), by and through their undersigned counsel, hereby submit this Brief in support of their Motion for Summary Judgment.

**I.      INTRODUCTION**

This is a First Amendment retaliation case that arises out of the Plaintiff's discharge from employment as a probationary corrections officer with the Bucks County Correctional Facility. Plaintiff's claim fails because (1) the Plaintiff's speech – two internal reports to shift command describing incidents with inmates – falls outside the protection of the First Amendment or (2) the Plaintiff cannot establish an unlawful policy, practice, or custom of retaliating against employees for exercising their First Amendment rights.

## II.   STATEMENT OF FACTS[1]

### A.   The Parties

Defendant County of Bucks is a municipal entity that maintains offices in Doylestown, PA. (Compl. at ¶ 2). Defendant Bucks County Department of Corrections is a County funded and operated criminal justice agency, part of the executive branch of county government. (See description of Department of Corrections at Bucks County Government website, attached hereto as Exhibit "A"). The Department of Corrections services all municipal and state law enforcement authorities via the Bucks County Court of Common Pleas and 18 local District Courts. (Ex. A). The Department of Corrections is the single largest criminal justice agency within Bucks County, employing 328 people in various types of jobs. (Ex. A). The Bucks County Correctional Facility ("BCCF") is a facility that houses medium to maximum security classified pre-trial detainees and convicted prisoners. (Ex. A).

Plaintiff Peter Hock ("Hock") worked as a probationary Corrections Officer in the BCCF for a little less than six months, from April 8, 2002 through September 30, 2002. (See excerpted pages of the deposition of Peter Hock ("Hock dep."), dated July 27, 2005, attached hereto as Exhibit "B," at 101-102, 115). Hock understood that he (1) was a probationary employee for his first six months of employment; (2) would receive evaluations after 90, 120, and 150 days to determine whether his performance was acceptable to continue employment; and (3) was not part of the union until he completed his probationary period. (See Ex. B, Hock dep. at 101-102). As a Corrections Officer,

---

[1]   For purposes of this motion only, Defendants accept the "evidence in the light most favorable to the nonmovant, giving that party the benefit of all reasonable inferences derived from the evidence." Waldron v. SL Indus., Inc., 56 F.3d 491, 496 (3d Cir. 1995)(citations omitted).

2

Hock was responsible for maintaining security and discipline in the BCCF. An important task of a Corrections Officer is writing and understanding reports. (See Ex. B, Hock dep. at 19, 24, 111-12; see also Job Description of Corrections Officer for the County of Bucks, attached hereto as Exhibit "C").

> **B. Writing Incident Reports Is A Critical Function of the Corrections Officers within the BCCF.**

Writing incident reports is an important duty of a Corrections Officer at the BCCF. (See Ex. B, Hock dep. at 19, 24). Hock received a few days of training in the writing of reports. (See Ex. B, Hock dep. at 19-20). In the event that a Corrections Officer witnessed an incident, the BCCF required a Corrections Officer to complete an incident report. (See Ex. B, Hock dep. at 23). In fact, a Corrections Officer usually had to complete a written report before the Corrections Officer could leave work after completion of his or her shift. (See Ex. B, Hock dep. at 23-24). Corrections Officers could be disciplined if they did not write an incident report in a timely manner. (See Ex. B, Hock dep. at 24). Hock sought to include all important facts in the incident reports that he completed. (See Ex. B, Hock dep. at 20).

> **C. Hock Writes Two Incident Reports In The Course Of His Duties As A Corrections Officer That He Now Claims Are Protected By The First Amendment.**

Hock wrote only two incident reports that form the basis for his complaint. (See Ex. B, Hock dep. at 10-11; see also Compl. at ¶ 29). The first report occurred on August 8, 2002, when Hock completed an incident report describing his observations of a "Code 99" F block incident involving an inmate that occurred on August 6, 2002. (See Ex. B, Hock dep. at 11-26; see also Incident Report From Corrections Officer Hock to Shift Command, dated August 8, 2002, attached hereto as Exhibit "D"). Hock wrote that "[i]t

3

seemed that the inmates where [sic] tring [sic] to get storys [sic] straight. I saw a lot of them whispering about it and telling each other what I/M Herder thought happened." (See Ex. B, Hock dep. at 11-26; see also Ex. D).[2] Hock turned the report into shift command and did not provide a copy to anyone else. (See Ex. B, Hock dep. at 13). Hock did not verbally report anything that was not in his written report. (See Ex. B, Hock dep. at 10-12). Hock had a responsibility as a Corrections Officer to complete this report. (See Ex. B, Hock dep. at 23). No one told Hock to change or rewrite his report. (See Ex. B, Hock dep. at 13-14).

The second report occurred on September 10, 2002, when Hock submitted an internal incident report to shift command describing his observation of a Code 99 incident in the reception area. (See Ex. B, Hock dep. at 45-49, 69-70; see also Incident Report From Officer Hock to Shift Command, dated September 10, 2002, attached hereto as Exhibit "E"). Hock did not submit the incident report to anyone else. (See Ex. B, Hock dep. at 69-70). Hock wrote that an inmate came and informed Officer Baehser that another inmate should not be on the same block. (See Ex. B, Hock dep. at 46; see also Ex. E at Bucks/Hock 0005). He also wrote that the inmate had to be forcibly taken off the block.[3] (See Ex. E at Bucks/Hock 0006).

---

[2]  Hock alleges in his Complaint that "he reported first-hand observations that inmates fabricated a version of events involving an incident of excessive force where the Defendants elected to pursue charges against the officers involved . . . ." (Compl. at ¶ 29). Hock also alleged in the Complaint that he reported that he witnessed the inmates contriving or rehearsing a version of the incident to support the inmate involved. (Compl. at ¶ 13). These averments are not supported by Hock's incident report. (See Ex. D). Under either version of the report, Hock fails to establish that his speech was on a matter of public concern.

[3]  Hock alleges in the Complaint that "he reported a still unexplained security breach by the Defendants which Defendants twisted into an allegation of excessive force by the plaintiff in order to justify his termination." (Compl. at ¶ 29). Hock also alleged in the Complaint that he reported "his observations of the incident and his immediate recognition of the error in the system – that the inmate (a violent offender who was allowed by that error to attack the inmate/cousin of a man he
(continued...)

4

Two other officers (Officer Vegvary and Officer Baehser) also completed reports of this incident, which were similar to Hock's report. Officer Baehser wrote that an inmate approached him and told him that he could not be on the same block as another inmate. (See Ex. B, Hock dep. at 49-51; see also Incident Report From Officer Baehser to Shift Command, dated September 10, 2002, attached hereto as Exhibit "F"). Corrections Officer Vegvary wrote that he and Hock had to restrain an inmate and place him on the ground. (See Ex. B, Hock dep. at 51-53; see also Incident Report From Corrections Officer Vegvary to S/C, dated September 10, 2002, attached hereto as Exhibit "G"). Neither Baehser nor Vegvary were disciplined for the incident or submitting reports of the incident. (See Ex. B, Hock dep. at 51-52).

### D. Hock's Discharge From Employment

On September 30, 2002, Captain Brown gave Hock a 150 day evaluation showing that he had received a 59 percent average. (See Ex. B, Hock dep. at 83; see also Captain's Review Form Probationary Employee Evaluation attached hereto as Exhibit "H"). Hock needed 60 percent or above to pass his probationary period. (See Ex. B, Hock dep. at 60; see also Ex. H). Brown also wrote that "[s]upervisors have reported that Officer Hock lacks IPC skills and has been overly aggressive with inmates. I counseled him about this on 9/9/02. On 9/10/02 Officer Hock was again involved in excessive use of force on an inmate. Therefore, I am recommending termination at this time." (See Ex. H; Compl. at ¶ 23).

---

(...continued)
        murdered) should not have been mixed with the general prison population." (Compl. at ¶ 22).
        The averments in the Complaint are not supported by Hock's incident report. (See Ex. E).
        Neither of these versions of the report are on a matter of public concern.

5

On September 30, 2002, the County of Bucks terminated Hock's probationary employment.  (See Ex. B, Hock dep. at 114-16; see also County of Bucks Record of Disciplinary Action attached hereto as Exhibit "I").  Hock responded that "[s]upervisors need to step up to the plate."  (See Ex. B, Hock dep. at 116; see also Ex. I).  Hock meant that some of the supervisors that he viewed as being sloppy or not following procedure had to improve their performance.  (See Ex. B, Hock dep. at 116).  Hock did not write anything about the two incident reports of August 8, 2002 or September 10, 2002 or his First Amendment rights in response to his termination.

### III.   ARGUMENT

#### A.   Summary Judgment Standard Under Fed. R. Civ. P. 56

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Hersh v. Allen Prods. Co., Inc., 789 F.2d 230, 232 (3d Cir. 1986).  In making this determination, a court must draw all reasonable inferences in favor of the non-movant.  See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party.  See id.; Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989).

#### B.   Hock Has Failed To State A Claim For Retaliation Under The First Amendment.

Hock alleges that the County terminated his employment in retaliation for exercising his rights under the First Amendment to the United States Constitution.  (Compl. at ¶ 6).  His alleged protected speech consists of two internal reports to shift

6

command of his observations of inmates in the BCCF, both of which he was required to make per department guidelines. (Compl. at ¶¶ 8-22).

A First Amendment retaliation claim is governed by a three-step analysis:

- First, the plaintiff must prove he engaged in activity protected by the First Amendment.

- Second, the plaintiff must show that the speech "was a substantial or motivating factor in the alleged retaliatory action."

- Third, if the plaintiff meets these burdens, defendants "have an opportunity to defeat [the] claim by demonstrating that they would have taken the same action absent the protected conduct."

See Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004) (citations omitted).

Here, Hock's claim fails because the alleged speech is not protected by the First Amendment.

### 1. Hock's Reports To Shift Command Of His Observations Of Inmates Fall Outside The Protection Of The First Amendment.

To qualify as speech protected by the First Amendment, the alleged speech must satisfy the United States Supreme Court's test set forth in Pickering v. Board of Education, 391 U.S. 563 (1968). See Curinga, 357 F.3d at 310. The test first requires that the speech be on a "matter of public concern." Id. Second, the public interest favoring the plaintiff's expression must not be outweighed by any injury the speech could cause to the employer's interest in promoting the efficiency of the public services it performs through its employees. Id.

7

### (1)   Hock's Internal Reports To Shift Command Do Not Constitute Speech On A Matter Of Public Concern.

The First Amendment does not protect speech that is purely personal and does not raise any issues of public concern.  See Curinga, 357 F.3d at 313.  "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"  Id. (citations omitted).  In analyzing whether the speech is on a matter of public concern, the court must examine the content, form, and context of the speech.  See Brennan v. Norton, 350 F.3d 399, 413 (3d Cir. 2003).  The primary concern is whether the plaintiff's speech enhances the process of self-governance.  See Azzaro v. City of Phila., 110 F.3d 968, 977 (3d Cir. 1997).

In Connick v. Myers, the Supreme Court of the United States found that an employee's speech expressing disagreement or criticism of an internal employment issue was not speech "on a matter of public concern."  Connick v. Myers, 461 U.S. 138, 148 (1983).  In Connick, an assistant district attorney circulated a questionnaire to co-workers regarding office transfer policies, office morale, the need for a grievance committee, their level of confidence in their supervisors, and whether they felt pressured to work on political campaigns.  Id. at 141.  The Court held that only the question regarding political campaigns dealt with a matter of public concern, and that the other questions merely reflected the employee's opposition to being transferred.  See id.  The Court held that the questionnaire, "if released to the public, would convey no information other than the fact that a single employee is upset with the status quo."  Id.  The Court found significant that the plaintiff had not sought "to inform the public that the District Attorney's Office was not discharging its governmental responsibilities" or "to bring to light actual or potential

8

wrongdoing or breach of the public trust." Id. Rather, the plaintiff's "speech" concerned only her "dissatisfaction with a transfer." Id.

Similarly, in Connor v. Clinton County Prison, the district court found that a prison employee's speech was not on a matter of public concern, even though the speech involved an alleged impropriety in connection with the work release of an inmate. See Connor v. Clinton County Prison, 963 F. Supp. 442, 446-50 (M.D. Pa. 1997). In Connor, the plaintiff's First Amendment claim was based on her private log of workplace events, including an incident in which she was asked to prepare a work release without proper documentation. Id. The court wrote:

> The concern expressed in Connor's log is that, in one instance, the Deputy Warden wanted her to prepare a work release for an inmate when she did not have proper documentation that the inmate was to be so released. This is not a discussion of a practice or policy of the Clinton County Prison; it is a complaint that Connor feels that she is being blamed for doing something wrong when she only followed the proper procedure. There is no indication that Connor intended to make the issue one for public debate, or was even expressing any opinion as to whether formal documentation of work release requests is proper or necessary. To paraphrase Connick: The issue of whether Connor should be disciplined for not preparing a work release . . . is not a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal.

See id. at 449.

Federal courts have consistently granted summary judgment where the speech involves a personal dispute or disagreement over an internal employment issue. See Muti v. Schmidt, No. 03-1206, 2004 U.S. App. LEXIS 7933 at *15 (3d Cir. Apr. 21, 2004) (Non-Precedential) (ruling that a letter from plaintiff to several county officials expressing plaintiff's objection to the purchase of real property and his opinion that an

9

expansion of "investigative and legal staffing was a waste of public resources" was not protected speech); see also Myers v. Wilkes-Barre Twp., 204 F. Supp. 2d 821, 826 (M.D. Pa. 2002) (granting summary judgment for defendant ruling that an internal memorandum expressing dissatisfaction with the conduct of a superior was not protected speech); Edmundson v. Borough of Kennett Square, 881 F. Supp. 188, 194 (E.D. Pa. 1995) (granting summary judgment because the comments regarding the police chief's disciplinary procedures were not intended to "unearth official misconduct," and comments over "[i]nternal office procedures that do not evidence any official wrongdoing have consistently been held not to be on a matter of public concern").

Here, Hock's internal reports to his shift command were not on any matter of public concern. Rather, Hock simply followed department guidelines in submitting a report to his shift command on two incidents that involved inmates at the BCCF. Hock's incident reports do not express dissatisfaction with the Department of Corrections or its policies, nor do they raise issues of public trust. See Myers v. Wilkes-Barre Twp., 204 F. Supp. 2d at 826. Hock merely reports his observation of incidents involving inmates during his normal course of duties. Hock's First Amendment theory would turn every internal incident report in the BCCF into a federal constitutional case. Hock's speech was not a matter of public concern.

### (2)    The Balancing Of Interests Favors The Defendants.

If the court determines that the speech was on a matter of public concern, it must engage in the Pickering balancing test. That is, for speech to be protected, the employee's interest in the speech must exceed the public agency's interest, as an employer, in running an efficient and effective workplace. See Curinga, 357 F.3d at 309. In doing this balancing, the court should consider (1) whether the statement impairs

10

discipline by superiors or harmony among co-workers, (2) has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or (3) impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.  See id. (citations omitted).  The employer need only show a significant potential disruption caused by the alleged speech, rather than actual disruption.  See Watters v. City of Phila., 55 F.3d 886, 896 (3d Cir. 1995) (citing Waters v. Churchill, 511 U.S. 661, 114 S. Ct. 1878 (1994)); see also Green v. Philadelphia Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1999) (noting that if the plaintiff's speech could potentially disrupt the work of the department, and this potential for injury outweighs the public's interest in the plaintiff's speech, then judgment for the defendant is proper).

      Here, Defendants' interest in maintaining an efficient workplace outweighs Hock's interest, if any, in his internal reports to his shift command.  If granted protection, Hock's theory could turn every internal report in the prison into a First Amendment case.  This would impact the BCCF's ability to manage its workforce and provide for safety and security in the prison.  It would allow any disgruntled former employee to turn his discharge into federal court litigation, or force the County to incur costs in discovery, simply by claiming that his job-related report to his superiors constituted speech on a matter of public concern.  As a result, Hock's claim fails under the First Amendment balancing test.

11

### C.  Hock Has Not Established An Unlawful "Policy, Practice, Or Custom" Sufficient To Prove Municipal Liability Under Section 1983.

Hock has likewise failed to raise any evidence of a "policy, practice or custom" sufficient to establish municipal liability under 42 U.S.C. § 1983.[4]

Under Section 1983, a municipality may be held liable only if the municipality, through a policy, practice, or custom, causes a deprivation of a constitutional right. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); see also Chernavsky v. Township of Holmdel Police Dept., No. 04-3621, 2005 U.S. App. LEXIS 11173, at *5-7 (3d Cir. June 14, 2005) (Non-Precedential) (affirming grant of summary judgment in favor of defendants because plaintiff failed to prove a policy or custom of retaliation against officers for exercising their First Amendment rights); Cavicchia v. Philadelphia Housing Auth., No. 03-0116, 2003 U.S. Dist. LEXIS 20311, at *37-45 (granting summary judgment on claim of municipal liability against PHA because plaintiff failed to show a constitutional violation, a pattern of violations, a need for different training, or deliberate indifference on behalf of PHA's policymakers); aff'd, No. 04-2344, 2005 U.S. App. LEXIS 12722 (3d Cir. June 27, 2005). A municipal custom may be established only by evidence that a practice, although not authorized by law, is so permanent and well-settled as to virtually constitute law. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). To prove a "custom," the plaintiff must establish "that policymakers were aware of similar unlawful conduct in the past, but

---

[4]  Hock failed to raise Monell allegations in the Complaint. Thus, all claims against the municipal defendants should be dismissed. Even if Hock raised Monell claims in the Complaint, Hock fails to establish a policy, practice, or custom of retaliating against Corrections Officers for exercising their First Amendment rights.

12

failed to take precautions against future violations, and that this failure . . . led to plaintiff's injury."  Id. at 972.

Further, the plaintiff must show that the alleged "policy, practice, or custom" was the "moving force" behind any violation of her constitutional rights.  See Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (noting that plaintiffs must prove "that the City's inadequate training policies were the 'moving force' behind their injuries," and that plaintiffs had failed to meet this "causation requirement") (citations omitted).

Here, Hock's claim for municipal liability fails because he has not established "deliberate indifference" in support of a "policy, practice, or custom," causation, or any underlying constitutional violation.  Hock has not identified the County of Bucks' policymakers, shown a pattern of violations, shown that the County's "policymakers" acted with deliberate indifference, or shown that the alleged "policy, practice, or custom" was the "moving force" behind the deprivation of Hock's constitutional rights.

## IV. CONCLUSION

For the foregoing reasons, Defendants County of Bucks and Bucks County Department of Corrections respectfully request that this Court grant this motion, grant judgment in favor of Defendants and against Plaintiff, and enter any further relief deemed just and appropriate by the Court.

Date: August 1, 2005

s/
Frank A. Chernak (I.D. No. 57602)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Attorneys for Defendants
County of Bucks and Bucks County
Department of Corrections

**CERTIFICATE OF SERVICE**

I, Frank A. Chernak, hereby certify that on the 1st day of August, 2005, a true and correct copy of the foregoing Motion of Defendants County of Bucks and Bucks County Department of Corrections for Summary Judgment Pursuant to Fed. Civ. R. P. 56, and Brief in support thereof has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that I caused a true and correct copy of same to be served upon the following counsel via U.S. Mail, postage prepaid, addressed as follows:

> David P. Bateman
> Bateman & Caliendo, LLC
> 420A Dresher Road
> Mezzanine Level
> Horsham, PA  19044

Date:  August 1, 2005                           s/
                                                Frank A. Chernak